UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RONALD G. TAYLOR,

        Plaintiff,

  -v-                                        No.  14CV4965-LTS-JLC

T-MOBILE USA, INC.,

        Defendant.
-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this diversity action, <u>pro se</u> Plaintiff Ronald G. Taylor ("Plaintiff" or "Taylor") asserts causes of action for breach of contract and negligence arising out of the decision of Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") to terminate his cellular phone service.  T-Mobile now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint.  The Court has jurisdiction of this case under 28 U.S.C. § 1332.  The Court has carefully considered the parties' submissions, and grants Defendant's motion in its entirety for the reasons stated below.

<u>BACKGROUND</u>[1]

        Plaintiff first established cellular telephone service with Defendant on or about

---

[1] The relevant factual history is drawn, in part, from the Complaint in this action, which was originally filed in New York City Civil Court, New York County, under case number CV-14755-14/NY.  The case was removed to this Court by Defendant on July 2, 2014, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  (<u>See</u> Notice of Removal, ECF Docket Entry No. 2.)  The Complaint comprises ECF pages 6-17 of ECF Docket Entry No. 2.  Additional facts concerning the terms of certain contracts and communications integral to the Complaint are drawn from the Declaration of Christopher Muzio in Support of Defendant's Motion to Dismiss (ECF Docket Entry No. 4 ("Muzio Dec.")) and Plaintiff's response thereto (ECF Docket Entry No. 9 ("Pl's Resp.")).

July 25, 2005, approximately nine years before commencement of this lawsuit.  (Compl. ¶ 9; Muzio Dec. ¶ 6.)  T-Mobile asserts that, as part of its standard operating procedure, it includes a copy of its terms and conditions, limited warranty, and return policy in the boxes of purchased devices, and that on July 25, 2005, the date on which Taylor activated his T-Mobile account, the 2004 Terms and Conditions ("Terms and Conditions") were in effect and were included in the box with the phone that Plaintiff purchased.  (Muzio Dec. ¶¶ 7-8.)  Plaintiff acknowledges that the Terms and Conditions were included in his box.  (Pl's Resp., ECF Docket Entry No. 9 at ECF p. 5.)  The 2004 Terms and Conditions contain a provision stating that T-Mobile "may suspend or terminate [a user's] Service for any reason or no reason upon 3 days notice (unless a longer period is required by law)."  (See Muzio Dec., Ex. B. ¶ 4.)  Plaintiff maintained his account in good standing.  (Compl. ¶ 10.)

In early 2014, Plaintiff commenced an action against T-Mobile in Small Claims Court.  That action was settled pursuant to a written settlement agreement (the "Settlement Agreement") drafted by T-Mobile, under which T-Mobile paid Plaintiff $1,000.  (Compl. ¶ 1 at ECF pp. 7-8, ¶ 23; Ex. A to Pl's Resp.)  The Settlement Agreement, which was signed by T-Mobile and by Plaintiff on May 1, 2014, and April 30, 2014, respectively, provided that it superseded all prior agreements between the parties, "[e]xcluding the T-Mobile Terms and Conditions and Service Agreement."  (Pl's Resp., Ex. A ¶ 3.)  The Settlement Agreement contains no provision specifically addressing the continuation or termination of Plaintiff's T-Mobile service.  (See Pl's Resp., Ex. A; Compl. ¶ 26.)  On or about May 1, 2014, Plaintiff purchased new proprietary telephone equipment from T-Mobile for $847.99.  (Compl. ¶ 24; Pl's Resp. Ex. G.)

On or about May 2, 2014, Plaintiff received a letter from Defendant stating that

his service was being terminated effective May 17, 2014. The letter, which was addressed to Plaintiff, referred to an account number that was not his. (Compl. ¶ 25.) Plaintiff alleges that after receiving the letter, he contacted T-Mobile and was told that his account was in good standing and up to date financially. (Compl. ¶ 15.) Defendant subsequently terminated Plaintiff's service. (See, e.g., Compl. ¶ 1.) Plaintiff alleges that the termination imperiled the well-being of his elderly mother, whose cellular telephone service was provided under Plaintiff's account. (Id.) Plaintiff claims that he now has unusable, "locked" proprietary T-Mobile equipment and alleges generally that T-Mobile has a history of unscrupulous business practices and that it has subjected Plaintiff to such practices. (Compl. ¶¶ 1, 27.)

Plaintiff seeks various declarations that Defendant's conduct was wrongful, an award of trebled punitive damages, and attorneys' fees. (Compl. at ECF pp. 13-14.)

DISCUSSION

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint. When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the Court assumes the truth of facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citing City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 392 (2d Cir. 2008)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. Because Taylor brings this action pro se, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam) (internal quotation marks and citation omitted). Nevertheless, even where a Plaintiff appears pro se, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y.2009) (internal quotation marks and citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, a district court may consider "only the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Building Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (citing In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (internal quotation marks omitted)). In determining this motion the Court has considered, in addition to the Complaint, the terms of the Settlement Agreement, the T-Mobile Terms and Conditions effective December 2004, and T-Mobile's May 2, 2014, letter to Plaintiff, as submitted by the parties. All of the foregoing documents are integral to the allegations of the Complaint, and their authenticity is undisputed by the parties.

Breach of Contract Claim

Plaintiff claims that T-Mobile's decision to terminate his cellular service constituted a breach of the Settlement Agreement entered into by the parties in April 2014. (Compl. ¶¶ 23-26.) The Complaint alleges, truthfully, that the Settlement Agreement contained no provision stating "that [Defendant] will terminate service with [Plaintiff]." (Compl. ¶ 26.)

The Settlement Agreement did not, however, contain any provision promising the continuation of Plaintiff's service, either, and it specifically left in place the 2004 Terms and Conditions governing Plaintiff's account relationship. The Terms and Conditions included the following provision, in a paragraph captioned "Term: Cancellation of Service":

> We [T-Mobile] may suspend or terminate your Service for any reason or no reason upon 3 days notice (unless a longer period is required by law).

(Muzio Decl. Exh. B at ¶ 4.)

Under New York law, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). "[W]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations." Slamow v. Delcol, 174 A.D.2d 725, 726 (2d Dep't. 1991) (citing cases); accord In the Matter of Matco-Norca, Inc., 22 A.D.3d 495, 496 (2d Dep't. 2005) (finding the language of a shareholders' agreement to be plain and unambiguous as written, and applying the clear meaning).

Here, the relevant contract documents are unambiguous. The Settlement Agreement does not preclude the termination of Plaintiff's account, and preserves the three-day cancellation notice provision of the Terms and Conditions. That provision permits cancellation "for any reason or no reason"; Plaintiff's allegations that T-Mobile's decision was malicious or in retaliation for his prior lawsuit against the company are therefore immaterial.

Plaintiff's complaint and response to the motion acknowledge that T-Mobile gave him fifteen days' notice of the termination of his service, well in excess of the required three

days. Even though the letter, which was addressed to him and which he received, cited the incorrect account number, no facts are alleged that, read in the light most favorable to Plaintiff, could support a finding that T-Mobile's intention to terminate service as permitted by the Terms and Conditions was not communicated to Plaintiff in a timely and effective manner. Thus, Plaintiff has failed to plead or proffer facts sufficient to state a cause of action for breach of the Settlement Agreement and his first cause of action will be dismissed.

Negligence Claim

Plaintiff's negligence claim is rooted in the same conduct underlying his breach of contract claim: T-Mobile's termination of his account. Breach of contract is generally not actionable as a tort unless a legal duty independent of the contract itself has been violated. See Clark-Fitzpatrick, Inc. v. Long Island Rail Road Company, 70 N.Y.2d 382, 389 (1987) (affirming dismissal of tort allegations that were mere restatements of claims made for breach of contract). Such a duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." Id.; accord, U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 162 (2d Cir. 1996) ("It has long been New York law that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated . . . .") (internal quotation marks and citation omitted).

Plaintiff's complaint does not allege any such duty, nor any corresponding violation. Although Plaintiff claims that his elderly mother's life was placed in danger by Defendant when his cellular service was terminated (Compl. ¶ 1), he alleges no facts that would support a finding that T-Mobile had any duty to his mother, who was not even a party to the

contract.  Nor are Plaintiff's allegations that T-Mobile employed "blithering idiots," "surreptitiously" misled him into believing that his account was not at risk of termination, and sold him additional services and merchandise the day before it notified him that it was terminating his account sufficient to demonstrate that T-Mobile owed Plaintiff any legal duty independent of the Terms and Conditions.

Furthermore, Plaintiff's negligence claim is barred by New York's economic-loss doctrine, which recognizes that any "damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort, unless a legal duty independent of the contract itself has been violated." Suffolk Laundry Services, Inc. V. Redux Corp., 238 A.D.2d 577, 579 (2d Dep't 1997) (citing Bellevue S. Assoc. v HRH Constr. Corp., 78 N.Y.2d 282, 294-95 (1991)).  "New York's economic loss rule restricts plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefit of their bargain."  Orlando v. Nourania of America, Inc., 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).  If the damages are the type remedial in contract, a plaintiff may not recover in tort.  Id. at 225.  Plaintiff's negligence claim is simply a restatement of his contract allegations, and is based on precisely the same conduct by T-Mobile.  Reading the Complaint in the light most favorable to Plaintiff, the Court can discern no factual allegations plausibly giving rise to an inference of an independently tortious violation of duty on the part of the Defendant.  Furthermore, because Plaintiff has not alleged injury to his person or property separate from the economic injury he alleges due to breach of contract, he must be held to his contractual rights and remedies.

Other Allegations

The Court has considered whether Plaintiff's allegations regarding T-Mobile's sale of proprietary, or "locked," equipment to him the day after settling Plaintiff's Small Claims action and the day before cancelling his service could support a viable fraud claim.  "To plead a claim of fraud under New York law, plaintiffs must allege five elements: (1) misrepresentation of a material fact; (2) the falsity of that representation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance."  G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 551 (S.D.N.Y. 2002) (citing May Dep't Stores v. Int'l Leasing Corp., 1 F.3d 138, 141 (2d Cir. 1993)).  Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This heightened pleading standard requires Plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation marks and citation omitted).  The Complaint fails in this regard as well, because Plaintiff has identified no express misrepresentation by T-Mobile upon which he relied in connection with the complained-of transaction, no facts indicating T-Mobile's intent to defraud him, and no legal duty on T-Mobile's part at the time of the transaction to make any disclosures as to its intention to terminate his service.

Plaintiff's generalized allegations of unscrupulous business practices by T-Mobile, and his proffers concerning his prior complaints about service, Blackberry's termination of a marketing agreement with T-Mobile, and a complaint filed by the Federal Trade Commission against T-Mobile regarding billing practices that was filed six weeks after his

complaint in this action, are also insufficient to render plausible the breach of contract and negligence claims he has raised. Nor do they indicate that he has any other viable cause of action against T-Mobile in connection with the transactions and occurrences pleaded in the Complaint. Accordingly, Plaintiff's Complaint will be dismissed in its entirety.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted.

This Memorandum Opinion and Order resolves docket entry number 3.

The Clerk of Court is hereby requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
       January 16, 2015

               /s/ Laura Taylor Swain
              LAURA TAYLOR SWAIN
              United States District Judge

Copy mailed to:
Ronald G. Taylor
420 West 19th Street, 3-E
New York, NY 10011